It pleases the Court, Michael Resnick, a hearing on behalf of the Attendant. Your Honors, Courts have determined that the rule against legal malpractice cases of the Indian Command should not apply when the assignment of a cause of action for legal mal is incidental to a larger commercial transaction. You know, if you're trying to put us to sleep, you're doing a really good job. You're reading from something. Why don't you just state your argument and tell us what your position is. California law contains a prohibition against the assignment of these kinds of claims. They recognize an exception. Are you arguing that this case falls within the exception? I do argue that. Why? Tell us why. Because it's incidental to a much larger commercial transaction, Your Honor. We didn't even know, we meaning the client, didn't even know about the existence of the legal mal case until much later in time. This was a transaction to transfer $24 million in assets as well as liabilities. And the exception, and I would argue that it's a broad-based exception that is noted. What were the other assets? The other assets were, it was in a bankruptcy, Your Honor. It was loans. Loans that were made to various entities. $24 million plus liabilities. What's the underlying purpose for California's not liking the assignment of legal malpractice claims? What's the policy behind that? Certainly it applies to like personal choices in action, that type of thing, emotional distress, punitive damages, things that are personal to the litigant. Here, like I said, this was just a piece of a much larger entity, a larger amorphous. I would have thought one of the purposes of that prohibition against assignment was to prevent the financing of lawsuits. Is that your reading? I've never seen that as a reason against the financing of lawsuits, a legal malpractice case. In a situation like this, the lawyer failed to file claims against various entities, which ended up costing the plaintiff the $24 million. That had nothing to do with funding litigation. You know, I always find it interesting in claims where the underlying argument is legal malpractice, where the entity or person asserting that legal malpractice has, for example, in this case, missed the statute of limitations. That's what happened here. You did miss the statute of limitations, didn't you? We, meaning my client, didn't miss the statute of limitations. Our position would be that Bookhalter and the trust not only missed the statute of limitations, but they convinced the trust. I'm not talking about their statute. I'm talking about your statute, your client's statute. You have a year. You have a year to file. You didn't. To file this case? Yeah. I don't believe that issue has ever been raised by anybody in this case. I thought it was raised by the bankruptcy court. Didn't the bankruptcy court say there are four or five reasons to? Legal malpractice case, yes. That's because there is continuous. Excuse me. One of the reasons was that it was time barred, correct? Time barred, but, A, we didn't know about it. It was concealed from us, the claim that is that there was a bankruptcy provision that required the filing. And, B, there was continuous representation of the trust. What was concealed? That the bankruptcy court required a claim to be made within a certain amount of time. See, the trust that's involved here was represented. The statute of limitations. You were unaware of the one-year statute of limitations for malpractice claims? No, no, not the malpractice case. The underlying claim is the statute of limitations in the bankruptcy court for filing a claim in the bankruptcy court. We understand that's your basis for saying there was legal malpractice. The question I have, and I believe my colleague has, is isn't there a one-year statute of limitations for asserting this legal malpractice? I was getting to that. There's two reasons why that doesn't apply in this case. One was the concealment, which I enunciated earlier. I thought the bankruptcy court found that as early as July of 2011, the facts would have been evident about the underlying claim. Am I wrong about that? I don't believe the record supports that position. The second reason, before I forget, is that the trust itself was part of LFMG. That is the entity that was represented by Bookhalter. And there was continuous representation by Bookhalter of the trust during that period of time. So what? Well, that's a tolling provision of the legal malpractice statute. It tolls the statute of limitations for purposes of legal malpractice. So if a lawyer commits malpractice but continues to represent the client? I'm sorry, Your Honor. So if a lawyer does something that amounts to malpractice and he continues to represent the client, the statute of limitations toll for filing? Yes. In California, that's the law. And what's your authority for that? I believe it's right in the statute, 340.6 of the Code of Civil Procedure. Thank you. About the continuous representation rule. If there aren't any other questions, I'd like to save some time for rebuttal. I don't have any. Okay, we'll hear from the other side then. Thank you, Your Honor. Good morning. Dan McCarthy of Hillsborough for the appellees Bookhalter Nehmer and Benjamin Siegel. As Your Honors are aware, the Bankruptcy Court did have four independent grounds for granting the motion to dismiss. Counsel focused on two of those in his discussion just now, those being that malpractice claims are not assignable and the statute of limitations issue. The other two issues were that the exculpation clause in the confirmed plan as approved by the Bankruptcy Court's confirmed order granted an exculpation of liability for mere negligence to my clients as counsel for the committee and as counsel for the trust, which was the successor to the debtor. The other ground that the claim was not assigned was based upon the fact that the two assignment agreements defined the term claim, that was the asset that was assigned, as claims arising from a loan transaction with Fortress. And the malpractice claim arose later. It did not arise from the loan transaction with Fortress back in 2005. The malpractice action arose from subsequent alleged malpractice in 2010. Those two grounds alone are reason enough to affirm the Bankruptcy Court and the District Court's ruling. Let's talk about the other two issues. Your Honor asked a question, what were the assets that existed? And I want to clarify. Leave my call, I guess, that question. Sorry about that. We're the same guy. We're often confused with each other. The bankruptcy estate was wound up when the plan was confirmed, but as often happens in bankruptcies, there's a liquidating trust to clean up loose ends and try to get money for creditors. That's what happened here. Now, under the assignment agreements, there was only one asset that was assigned. And it's defined in Exhibit A to the two assignment agreements, which are at pages 284 and 296 of the supplemental excerpts. The claim that was assigned was what I said earlier, the claim arising from the loan transaction with Fortress. What about the $24 million that your opposing counsel refers to? Well, that's the claim for fraudulent transfer against Fortress. They alleged $24 million in a fraudulent transaction. And so when they lost that in July of 2011, according to the bankruptcy court's ruling granting the motion to dismiss the Fortress, they claim that they lost the right to that $24 million claim. Then they sued my clients for $21 million, the same damages. So the argument that the damage claim for malpractice is a small part of a larger commercial transfer is simply not true. There was no commercial transfer. There was one asset transfer. The trust wasn't even engaged in business. It had no commerce. And as far as the malpractice claim being a supposed small incidental part, it wasn't. It was a claim for the same damages. Assuming it was even assigned, it's $21 million out of that $24 million damage claim. So it's not a small incidental part. The White Mountains decision and the cases that it refers to, very clear about a large commercial transfer of assets with a malpractice claim being a very small piece of that. That's not what we have here. We also don't have an assumption of liabilities by LFMG in connection with the transfer of the fraudulent transfer claim. There were no liabilities assumed. Again, the trust didn't have any liabilities for LFMG to assume. Those two White Mountains factors are simply not present here. What's your position on what the record shows with regard to LFMG's first knowledge of the potential for the existence of the malpractice claim? Thank you, Your Honor. It's actually cited on page 32 of our brief. And the bankruptcy court held, quote, the limitations period for the LFMG cause of action expired in at the latest, July of 2012. Okay? And that's because the bankruptcy court had granted the motion to dismiss the fraudulent transfer claim on July 26, 2011. That's the trigger date for the statute in your view? Absolutely. Your Honor, we cite in our brief that there was a subsequent appeal. But for statute of limitations accrual purposes, it starts running when you lose in litigation. The fact that you have a subsequent appeal doesn't extend it. They lost on that fraudulent transfer claim on July 26, 2011. And the bankruptcy court explicitly ruled that that was one ground for granting the motion to dismiss. Now, counsel argues that the statute of limitations was, I guess, told because the supposed malpractice was concealed. Well, they knew that by July 2011 because they were told at that point that the motion to dismiss the fraudulent transfer claim was granted. The argument is made in the brief that there was continuous representation by my clients that somehow extended the limitation period. My clients didn't represent LFMG after the claims against Fortress were assigned in 2010. So there couldn't have been any continuous representation of LFMG that would have told that statute. Similarly, my clients didn't even represent the trust on that issue. The trust no longer had the right to pursue the fraudulent transfer claim after it was assigned in 2010. So there couldn't have been any continuous representation of the trust either. There was no tolling. Statute of limitations accrued in July 2011. It ran in July 2012. Thank you. I referred to, at the beginning of what I had to say, the plan's exculpation provision. Bankruptcy court orders, which are interpreted by the same bankruptcy court. The bankruptcy court's interpretation ordinarily is given great deference by the reviewing court. This bankruptcy judge said the confirmation order approved a plan under which the defendants were exculpated. That's entitled to great deference. And the appellant really doesn't suggest anything to lead you to a contrary conclusion. Okay. Thank you. Thank you. Thank you, Your Honor. Do you have a little time left? Just two items, Your Honor. Kelly argued in one breath that this was not a claim that could be assigned by definition in the particular contractual documents, yet in another breath he argued to you that it was a claim that we, the client, should have known about. Secondly, the exculpation clause, if the exculpation clause were given any merit in this particular case, if that were the only grounds that the court were to rule against my client on, it would be equivalent to circumventing the rule against an attorney exculpating himself from liability, malpractice liability on behalf of a client. There was an order. I beg your pardon, Your Honor? There was an order. An order? This isn't simply a contract. It was an order. There is an order dismissing a case against the trust, but that doesn't give rise to knowledge of the malpractice liability that gives rise to the claim here. Well, the question is whether this would be a situation where the lawyer exculpates himself. This is an order. This is not a situation where the lawyer writes a contract. That part's true, but the argument being made here is that we're exculpated from what we did, basically, by virtue of the bankruptcy court order. You're correct. There is an order. It's not analogous to what you said. It's not analogous to having a lawyer exculpate himself. Here, the court entered an order, and the court said the order exculpates the lawyers here. I mean, the court said that. I mean, you know, you may have an argument as to why the court is wrong, but the argument can't be that the lawyer exculpated himself. Thank you, Your Honor. Okay. The case is arguable. The case is arguable.
judges: Parker, Kozinski, Hawkins